# IN THE COURT OF APPEALS OF IOWA

No. 18-0272
Filed April 18, 2018

**IN THE INTEREST OF A.L. and B.L.,**
**Minor Children,**

**C.L., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A father appeals the juvenile court order terminating his parental relationship with two children. **AFFIRMED**.

Bryan P. Webber of Carr Law Firm P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

A father, Cole, challenges the juvenile court order terminating his parental relationship with his nine-year-old son, B.L., and his five-year-old daughter, A.L.[1] The order could not have come as a surprise. More than a year earlier, our court sent a "simple" message to Cole: "take positive steps to comply with the [Iowa Department of Human Services (DHS)] and court orders or [you] may face termination of [your] parental rights at some time in the future." *In re B.L.*, No. 16-0878, 2016 WL 6269888, at *9 (Iowa Ct. App. Oct. 26, 2016). But Cole did not comply with the court's expectations and instead was convicted of child endangerment—sacrificing precious visitation time with his children. In light of these circumstances, we reject Cole's challenge and affirm the termination order.[2]

## I.  Facts and Prior Proceedings

Cole married Tabitha in 2013. They were raising three children—A.C., who was born in 2009, in addition to B.L. and A.L. Cole is the biological father of B.L. and A.L. Tabitha is the biological mother of the two girls, A.C. and A.L. In 2015, A.C. accused Cole of sexual abuse. Cole acknowledged touching the girl's vagina, but claimed it was for medical reasons. A child-protective-service investigation determined A.C.'s accusations were credible and issued a founded abuse report.

---

[1] The juvenile court also terminated Tabitha's parental rights to A.L. but she is not a party to this appeal. The State did not ask to terminate the parental rights of B.L.'s mother, Sara, who was granted custody of that child.

[2] We review termination cases de novo, which means we examine both the facts and law and decide anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480–81 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

The DHS implemented a safety plan, but the parents did not follow it. The juvenile court approved a removal order for all three children in May 2015. The court adjudicated the children in need of assistance (CINA) in June.

In February 2016, the juvenile court approved the DHS case permanency plan that required Cole to have a sex-abuse assessment if he "is not actively engaged in individual therapy." In April, social worker Natasha Richman updated the court on Cole's compliance with the plan and expressed concern that he missed therapy appointments and then stopped seeing the counselor who was recommended for sexual offenders. Instead, Cole reported attending therapy but would not disclose the name of the counselor or the agency providing services. Despite the case worker's concerns, the juvenile court ordered B.L. returned to Cole and A.L. returned to Tabitha, with any visitation between A.L. and Cole to be "professionally supervised." Our court reversed that order in October 2016, finding a return to their parents was not in the children's best interests. *Id.*

On remand in November, the juvenile court afforded the parents an additional six months to work toward reunification. For Cole to achieve that goal, the court imposed the following conditions:

> The father shall complete a sex-abuse assessment if not actively engaged in individual therapy that encompasses sexual abuse allegations until successfully discharged, comply with FSRP [family safety, risk, and permanency services] recommendations and consistently attend scheduled visits, transition from professionally supervised visits, comply with terms of probation, provide drug screens as requested, refrain from illegal substance use, and be supportive of and as requested, actively participate in children's therapy.

Cole's case took a downward turn a few months later. In February 2017, Cole engaged in a "physical altercation" with his father, who was the caregiver for the children. The paternal grandfather told police Cole held him down while Tabitha punched him in the face. The children witnessed the assault. Cole also prevented the grandfather from dialing 911. The State charged Cole with multiple crimes, and the juvenile court suspended visitation. In September, Cole pleaded guilty to child endangerment and received a suspended sentence. The district court modified the criminal no-contact order to allow the DHS to restart visitation and reunification efforts. The parents asked for therapeutic visits to ease back into the children's lives, but few interactions took place because the State already filed a petition to terminate parental rights.

The juvenile court held a two-day termination trial in October 2017. Social worker Richman testified Cole had not met the DHS expectations regarding therapy because Cole was not seeing a "sex-abuse therapist." Cole testified he *did* discuss the sexual abuse issue with his counselor, Michael Huff, but Cole also continued to deny he molested A.C. Cole acknowledged he had not met the court's expectation of progressing past supervised visitations due to his criminal conviction. Cole also called Huff as a witness. Huff testified he did not perform a sexual-abuse assessment of Cole, and did not provide Cole with sexual-offender treatment. In a nod to A.C.'s accusations, Huff introduced Cole to a children's book in the counseling office that described "good touch and bad touch" from a child's perspective.

In January 2018, the juvenile court issued its order terminating parental rights, citing Iowa Code section 232.116(1)(d) and (f) (2017).

## II.	Legal Analysis

In his petition on appeal, Cole raises three claims: (1) the State failed to offer clear and convincing evidence on the statutory grounds for termination, (2) termination was not in the children's best interests, and (3) the juvenile court should have declined to terminate because relatives have legal custody of the children.  We will address each issue in turn.

### A.	Statutory Grounds

When, as here, the juvenile court rests its decision on more than one subsection of Iowa Code section 232.116(1), we may affirm on any ground supported by clear and convincing evidence.  *D.W.*, 791 N.W.2d at 707.  We will address paragraph (f), which requires proof of the following elements: (1) the children are four years of age or older; (2) they have been adjudicated as CINA under section 232.96; (3) they have been removed from the physical custody of the parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) the State offered clear and convincing evidence that at the present time the children cannot be returned to the parent's custody as provided in section 232.102.  Iowa Code § 232.116(1)(f).

Cole contests only the fourth element, asserting "he did comply with the court's directives insofar as attending individual therapy regularly and that he addressed the sexual-abuse allegations with his therapist."  Cole also contends he could meet the children's needs and had been able to do so "throughout their lives."

We are not persuaded by Cole's position.  The juvenile court aptly summarized the situation: "the parents' past behavior and lack of demonstrated

change show that the children are at continued risk for the same harm that has led to a removal since May 2015. Further, since the criminal behavior in February 2017, the children are at risk for additional adjudicatory harms." Our supreme court has reasoned that a parent's failure to address his role in sexual abuse may hurt his chances of regaining custody and care of his children. *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002). In this case, Cole deepened his difficulties by assaulting his father in front of his children, and thereby forfeiting his right to visitation for many months. Clear and convincing evidence supported termination under section 232.116(1)(f).

## B. Best Interests

Cole argues even if the State met its burden under section 232.116(1), termination is improper because it does not serve the best interests of the children under sections 232.116(2) and 232.116(3)(c). *See In re M.S.*, 889 N.W.2d 675, 684 (Iowa Ct. App. 2016) (concluding closeness of the parent-child relationship may preclude termination under certain circumstances). Cole contends he shares a strong bond with his children. He also complains that termination results in separation of the siblings. He proposes termination could be avoided if B.L. were placed with Sara under a custodial order and a guardianship was established for A.L. with her grandparents.

As an initial matter, Iowa courts do not prefer guardianships as a legal alternative to termination of parental rights. *See In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (questioning "whether transferring guardianship and custody to the grandparents would actually provide more stability and safety for the child"). Cole's situation is not the exceptional case where the parent and would-be guardian have

a "healthy relationship that is free of conflict." *See In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017). As the State points out, Cole's "recent participation in an assault against the children's grandfather that led to the father pleading guilty to child endangerment charges is the strongest argument against a guardianship for A.L. with the grandparents."

On the closeness of the parent-child relationship, the record reveals a bond did exist between Cole and the children at the time of removal, but it has weakened since the assault and suspension of visitation. After the assault, both children expressed fear of Cole. B.L. did not want to resume visitation with his father, and A.L. missed her father, but was scared to see him by herself. Given these facts, section 232.116(3)(c) was not a strong countervailing factor.

As for the separation of the siblings, we agree brothers and sisters should be kept together whenever possible. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). But "the paramount concern" must be the children's best interests. *Id.* Best interests are measured under the legislative framework in section 232.116(2). That provision focuses on the children's safety, as well as the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, B.L.'s mother and A.L.'s grandparents appear to offer the most promising future for these children. We reject Cole's argument that termination of his parental rights was not in their best interests.

### C. Relative Custody

Finally, Cole alleges the juvenile court should have declined to terminate his parental rights because relatives have custody of both children—B.L. is with his mother, Sara, and A.L. is with grandparents. *See* Iowa Code § 232.116(3)(a). We first note the juvenile court did not bestow "legal custody" of A.L. on the grandparents as contemplated by section 232.116(3)(a). *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). As for B.L., just because he is in his mother's custody is not cause for preserving the parental rights of his father. The factors in section 232.116(3) are permissive. *Id.* In this case, the juvenile court gave sound reasons for not invoking those permissive factors:

> This court has considered the overall record, the lack of engagement in services to address the matter that bought these children under the court's jurisdiction, the parents' guilty plea to an act of child endangerment where they admittedly became involved in a conflict with the placement of the children at that time and the disruption of the children's placement. Not only did this matter substantially set the parents back in their quest for reunification, it reportedly had a major impact on the children.

We cannot add anything further to the juvenile court's clear view of the case.

**AFFIRMED.**